UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 17 CR 625 |
| | ) | |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| RUMAEL GREEN | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion filed by defendant Rumael Green ("Green") to suppress evidence obtained during a stop conducted by Sirjohn Hudson ("Hudson"), a security officer employed by AGB Investigative Services, Inc. ("AGB") and assigned to work at properties operated by the Chicago Housing Authority ("CHA"). The Court previously determined that Hudson lacked reasonable suspicion for the stop.[1] For the reasons set forth below, the Court denies the motion to suppress.

**I.    BACKGROUND**

After an evidentiary hearing, the Court found the following facts. At the time Hudson stopped defendant, he was an employee of AGB and was working as a security guard. Hudson was on duty but was not at the CHA property to which he was assigned when he stopped defendant in the laundry room at a Trumbull Park Homes. The Court also found that a CHA rule prohibits a tenant or guest to possess a firearm on CHA property.

The parties agree that, during the relevant time period, AGB provided security services to the Chicago Housing Authority pursuant to a contract. The contract states, among other things:

---

[1] Familiarity with the facts and the Court's previous decisions in this case is assumed.

## RECITALS

\* \* \*

**WHEREAS**, the CHA released Invitation for Bid No. 168-0 ("IFB") on or about June 26, 2015 to solicit security services at various CHA properties;

\* \* \*

**ARTICLE 2. CONTRACTOR'S DUTIES AND RESPONSIBILITIES**

Section 2.01    Services to be Performed

A.    Scope of Work

The services that the Contractor will provide during the term of the Agreement shall include, but not be limited to, security services (hereinafter collectively referred to as the "Services").

B.    Statement of Work

The Services to the performed by the Contractor during the term of the Agreement are more fully described in the Statement of Work set forth in Exhibit I incorporated by reference herein.

\* \* \*

Section 8.06    Independent Contractor

The Contractor and the CHA recognize that Contractor is an independent contractor and not an employee, agent, partner, joint venture, covenantor, or representative of the CHA . . .

\* \* \*

## EXHIBIT I

### STATEMENT OF WORK/SCOPE OF SERVICES

**SCOPE OF SERVICES**

*The contractor will perform any and all tasks customarily associated with providing security services.  This includes but is not limited to ensuring the following service requirements are provided.*

\* \* \*

**SECURITY GUARD DUTIES:** *All security guards utilized shall perform the following required duties:*

    a.    Be knowledgeable of and adhere to the specification requirements and security guard post orders to ensure strict compliance with the requirements is maintained. Security guards *must adhere to CHA security protocol and procedures directed by CHA and the on-site property manager.*

    b.    Not carry or use any type of non-lethal weapons, such as baton, chemical spray, etc. without proper training and prior written authorization.

    c.    Maintain respect for residents, guests, employees and contractors. . . .

    d.    Not depart from their assigned duty area(s) until they have been properly relieved.

    e.    Shall be alert to surrounding area of responsibility at all times.

\* \* \*

    j.    *Stop disturbances in Common Areas and all other areas as required by Site Managers and immediately alert Chicago Police Department for further assistance if needed.*

    k.    Identify Anti-Social Behavior patterns and deal with them appropriately. Incidents should be reported and documented to the Property Manager immediately.

    l.    Report for duty with the following identification as follows: Name Tag, Company Uniform/I.D., PERC Card (Unarmed-authorized as unarmed guard).

    m.    Not perform or engage in personal work or other non-duty activities while on duty, such as abusing telephone privileges. Telephones should be used only in the case of emergency and officers will be held accountable for all personal telephone calls.

    n.    Maintain a clean desk area, free from food, papers, etc. (if supplied).

    o.    Not engage in theft, vandalism, the purchase or sale of illegal substances, or any other illegal activity at any time while on duty.

    p.    Not be under the influence of any controlled substance or alcohol . . .

  p. [sic] Be fully awake while on duty; no sleeping, watching television, playing loud music, turning lights off, reading books, playing cards, etc.

  r. [sic] Be professional and courteous at all times. Refrain from foul and abusive language.

  s. Respect all visitors, and employees.

  t. Maintain a working relationship with Property Managers, CHA Asset Manager, CPD, CAPS and all visitors to the locations.

  u. No fraternizing or socializing among employees or known gang members . . .

  v. *Ensure that each visitor signs out when visiting the premises. Check all required identification (I.D.) of visitors: State of Illinois Drivers' License, State of Illinois Photo ID, Job Related Photo ID, Passport Photo ID, or other Photo ID[.]*

  y. Maintain a neat appearance at all times. Only authorized uniforms will be worn on duty, which readily identifies them as security personnel.

  z. Submit accurate timesheets with the proper signatures on a timely basis.

**Additional duties applicable to armed security guards and off-duty police security guards only**

  aa. No officer is permitted to wear, have in their possession or carry a firearm or other weapon without authorization or proper credentials: FOID Card (Armed-authorized to purchase a weapon and ammunition), TAN Card (Company Authorization to carry a weapon)[.]

  bb. Prior to having authorization, the officer and the officer's firearm must be in full compliance of local and state law. The officer must have satisfactorily completed a state certified/approved firearm-training program.

  cc. As required by State regulation, any firing or discharge of a firearm, even if accidental, must be reported to the Chicago Police Department and the property manager immediately; . . .

  dd. A firearm may not be drawn from its holster except in self-defense and in defense of human life.

  ee. The following registration forms are required to be carried on the officer whether armed or unarmed at all times . . .

  ff. Only use firearms that are in compliance with state and local laws (This applies to armed security guards only).

(CHA Contract No. 11642 between AGB Investigative Services, Inc. and the Chicago Housing Authority) (emphasis added). Defendant put forth evidence (which the government does not dispute) that CHA was authorized to pay AGB up to $110,000,000.00, roughly half of which was to cover the first two-year period of the contract and the rest to cover an optional second two-year term.

Based on Hudson's testimony (which the government does not dispute), the Court finds that, at the time Hudson stopped defendant, Hudson was wearing a navy-blue uniform with name tags and a vest. He was armed with a Springfield .45 caliber and was carrying handcuffs.

With respect to when he called police while on duty as an AGB security guard at CHA, Hudson testified that "a lot of situations are dispersed" and that "[o]ther situations are criminal, which require a police presence." (August 17, 2018 hearing transcript at 41). Hudson went on to explain, "I see a guy with a gun, I don't let him walk off and I go call the police." (Id. at 42). Instead, he intervenes and stays until police arrive. (Id.)

## II. DISCUSSION

The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV. The Court has already determined that Hudson did not have reasonable suspicion to stop defendant, but that does not resolve the motion to suppress. Hudson was working as a private security guard, not as a police officer, when he stopped defendant. The Fourth Amendment generally does not apply to private parties, but it "does apply

5

if the private party is acting as a government agent." *United States v. Aldridge*, 642 F.3d 537, 541 (7th Cir. 2011). The burden of establishing that a searcher was acting as an agent of the government rests with the defendant. *Aldridge*, 642 F.3d at 541; *United States v. Shahid*, 117 F.3d 322, 325 (7th Cir. 1997).

In considering whether a private searcher (like Hudson) was acting as an agent or instrumentality of the government during the search, a court considers "whether the government knew of and acquiesced *in the intrusive conduct* and whether the private party's purpose in conducting the search was to assist law enforcement or to further [his] own ends." *Shahid*, 117 F.3d at 325 (emphasis added) (citations omitted). In contemplating the issue, a court may consider "whether the private actor acted at the request of the government and whether the government offered the private actor an award." *Shahid*, 117 F.3d at 325 (citing *United States v. McAllister*, 18 F.3d 1412, 1417-18 (7th Cir. 1994)).

Defendant concedes the government did not acquiesce in the specific search conducted by Hudson on defendant. (Def. Reply [Docket 31] at 8). Nor does defendant put forth any evidence that Hudson or other security guards were generally rewarded (with, for example, bonus pay) for conducting stops or searches, such that it could be thought that CHA was inducing security guards to conduct unlawful searches. Defendant argues, instead, that Hudson was the government's agent during his search of defendant by virtue of the contractual relationship between CHA and AGB, which contractual relationship, according to defendant, empowers AGB security officers to conduct stops, as government agents, on CHA property.

The Seventh Circuit has rejected a similar argument in the context of mall security officers. In *Shahid*, the Seventh Circuit affirmed the denial of a motion to suppress evidence resulting from a search conducted by a shopping mall security officer. *Shahid*, 117 F.3d at 328.

6

The Seventh Circuit rejected the idea that the Sheriff had delegated the public function of policing the mall to mall security officers, such that mall security guards became state actors. *Shahid*, 117 F.3d at 327. Of course, this case is different from *Shahid*. Here, AGB contracted with Chicago Housing Authority, not a privately-owned mall. That distinction, however, did not seem to matter to the Court in *Shahid*. In fact, in *Shahid*, the Seventh Circuit specifically analogized the case to a case involving CHA security guards. As the Seventh Circuit explained in *Shahid*:

> [W]e recently held that a private security guard who "was employed to provide security for [Chicago Housing Authority] residents and was thereby authorized to carry a handgun, arrest people for criminal trespass pending arrival of the police, and use deadly force in self-defense" did not have powers that have been exclusively reserved to the police, and was not a state actor." *Wade v. Byles*, 83 F.3d 902, 906 (7th Cir. 1996), certiorari denied, 519 U.S. 935, 117 S.Ct. 311, 136 L.Ed.2d 227.
>
> *We see no reason to reach a different conclusion in this case.* As observed earlier, we concluded in *Koenig* that the 'happy coincidence' that both private citizens and police officers try to prevent crime 'does not make a private actor an arm of the government," [*United States v.*] *Koenig*, 856 F.2d [843] at 851 [(7th Cir. 1988)].

*Shadid*, 117 F.3d at 327) (emphasis added). So the fact that the contract is with CHA (and not merely a privately-owned mall) does not distinguish this case from *Shahid*.

What might distinguish this case from *Shahid* is if defendant could show AGB were the *de facto* or *de jure* law enforcement agency for CHA. *See Shahid*, 117 F.3d at 327-28 ("Shahid might have a fair argument if the mall security agency were the *de facto* or *de jure* law enforcement agency for the Castleton Square Mall. *Cf. Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (company-owned town subject to First and Fourteenth Amendments)."); *cf. United States v. Hoffman*, 498 F.2d 879, 882 (7th Cir. 1974) (railroad officers who were "authorized on a continuing and full-time basis to search actively for criminals

and trespassers and to use the power of the state when their search is successful" by virtue of a state law allowing them to "aid and supplement municipal police forces" were state actors); *Scott v. Northwestern Univ. School of Law*, Case No. 98 C 6614, 1999 WL 134059 at *3-6 (N.D. Ill. March 8, 1999) (statute granting university police department "the powers of municipal peace officers and county sheriffs" meant university police were state actors).

Thus, the question for this Court is whether the AGB guards like Hudson were more like the CHA guards in *Wade* or were more akin to a *de facto* law enforcement agency for CHA. Defendant has not pointed the Court to any state statute giving AGB's security guards at CHA police-like authority. It is true that the CHA is authorized to have its own police force with the powers of local police. 310 ILCS § 10/8.1(a) ("A Housing Authority in any municipality having over 500,000 inhabitants has power to police its property and to exercise police powers for the protection of the person and property of its residents, employees and visitors . . ."). Defendant has not, however, put forth evidence that CHA has delegated those powers to AGB.

As evidence of the powers CHA has given AGB, defendant put forth a copy of the contract between CHA and AGB, which contract sets out the services AGB security guards are contracted to provide. Most of the security guard "duties" are merely rules the guards are to follow, such as treating residents with respect, not stealing, not using alcohol and not sleeping while on duty. Aside from the rules, the contract lists only two actual services the security guards are to provide. First, the contract delegates to security guards the duty to "[e]nsure that each visitor signs in and signs out when visiting the premises" and to "[c]heck all required identification[.]" (CHA Contract No. 11642 between AGB Investigative Services, Inc. and the Chicago Housing Authority at Exhibit I(v)). Second, security guards are to "[s]top disturbances in Common Areas and all other areas as required by Site Managers and immediately alert

Chicago Police Department for further assistance if needed." (CHA Contract No. 11642 between AGB Investigative Services, Inc. and the Chicago Housing Authority at Exhibit I(j)). Hudson's testimony was consistent with the second duty, in that he testified that he would call police after certain incidents, including the one involving defendant.

Based on this evidence, the Court cannot say that AGB security guards are the *de facto* police force at CHA. The very fact that AGB security guards were expected to call police after incidents suggests they were not, in fact, the police force at CHA. *Cf. Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 897 (7th Cir. 2004) ("When a special officer's only recourse in a given situation is to call the police for help, it is 'a far cry from delegating all of the powers of the regular police patrol to the special officer.'") (quoting *Payton v. Rush-Presbyterian-St.Luke's Med. Ctr.*, 184 F.3d 623, 628 (7th Cir. 1999)).

Instead, the AGB security guards sound more like the guards in *Wade*, who, in addition to checking identification, were "authorized to carry a handgun, arrest people for criminal trespass pending arrival of the police, and use deadly force in self-defense." *Wade*, 83 F.3d at 906. Just so here. The AGB guards in this case carried guns, wore uniforms and vests, carried handcuffs, checked identification and held rule-breakers until the police arrived.

Because defendant has not carried his burden of establishing that Hudson was an agent of the government when he stopped Hudson, the Fourth Amendment is inapplicable. The motion to suppress, therefore, is denied.

IV.	CONCLUSION

For the reasons set forth above, the Court denies the motion to suppress [21].


SO ORDERED.	ENTERED:	December 17, 2018

_____
**JORGE L. ALONSO**
**United States District Judge**